# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BENJAMIN DUCHEK,<br>546 25TH PLACE NE.,<br>Washington, DC 20002<br><br>            Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>     Serve: CT Corporation System<br>            1015 15th St NW, Suite 1000<br>            Washington, DC 20005<br><br>and<br><br>HIGHER EDUCATION LOAN AUTHORITY<br>OF THE STATE OF MISSOURI (MOHELA)<br><br>Serve: CT Corporation System<br>       4701 Cox Rd, Ste 285<br>       Glen Allen, VA 23060-6808<br><br>            Defendants. | Civil Action No. 1:25-cv-1922 |

## COMPLAINT

Plaintiff Benjamin Duchek, by counsel, files this Complaint against Defendant Nelnet Servicing, LLC ("Nelnet") and Missouri Higher Education Loan Authority ("MOHELA") and alleges as follows:

### PRELIMINARY STATEMENT

1.  Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969) (explaining that the FCRA was intended to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans*

*Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner" (citations omitted)).

2. The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b).

3. Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a report finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Almost ten years later, the situation was even worse: a 2021 study found that more than 34 percent of surveyed consumers identified at least one error on their credit reports.[2]

4. Here, Mr. Duchek's credit reports reported that he had an outstanding balance on his student loans, which was incorrect because they had been the subject of a full military disability-related discharge.

---

[1] *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

[2] *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf.

5. When Mr. Duchek disputed the accounts with the consumer reporting agencies and explained that the loans had been discharged and there was no outstanding balance, Nelnet and MOHELA failed to adequately investigate his disputes. Instead, they verified the incorrect balance information.

6. As a result, Mr. Duchek alleges claims against Nelnet and MOHELA under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b)(1) for their failure: to fully and properly investigate his disputes; to review all relevant information provided by the consumer reporting agencies; and to appropriately mark his accounts as disputed.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331, and 15 U.S.C. § 168l(p).

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Mr. Duchek's claims occurred in this District, where he resides.

## PARTIES

9. Mr. Duchek is a natural person who resides in the District of Columbia. He is a consumer as defined by 15 U.S.C. § 1681a(c).

10. Nelnet is a student loan servicing company with its principal place of business in Lincoln, Nebraska. Nelnet is a "furnisher" as governed by the FCRA.

11. MOHELA is a student loan servicing company with its principal place of business in Chesterfield, Missouri. MOHELA is a "furnisher" as governed by the FCRA.

## FACTS

12. At the end of 2024, Mr. Duchek had his student loans discharged due to military-related disability reasons.

13. After the discharge, Mr. Duchek checked his credit reports and noticed that his student loans were still reflecting outstanding balances, making it look like he still owed hundreds of thousands of dollars for loans serviced by Nelnet and MOHELA.

14. Mr. Duchek was anxious to get this inaccurate information removed from his credit report, as he was looking to refinance his home and wanted to make sure that he received a favorable interest rate.

15. Mr. Duchek disputed the inaccurate account balance on the MOHELA account with Experian on December 20, 2024.

16. Experian forwarded Mr. Duchek's disputes to MOHELA.

17. MOHELA understood Mr. Duchek's disputes.

18. Upon information and belief, MOHELA did not conduct a thorough investigation of their records to determine whether the information they were reporting about Mr. Duchek's student loans were accurate.

19. Instead, MOHELA performed only a cursory review. For example, it did not review its documents to verify what Mr. Duchek stated in his dispute was true. Had MOHELA investigated, it would have known that the loans had been discharged.

20. Ultimately, MOHELA verified the outstanding balances that it was previously reporting about the accounts.

21. Again, this information was incorrect because the loans had been discharged.

22. Mr. Duchek again disputed the inaccurate account balances on his MOHELA and Nelnet student loans with Experian on January 29, 2025.

23. Experian forwarded Mr. Duchek's disputes to MOHELA and Nelnet.

24. MOHELA and Nelnet understood Mr. Duchek's disputes.

25. MOHELA again verified the incorrect outstanding balances that it was previously reporting about the accounts. Nelnet also verified the incorrect balances.

26. Neither of these companies performed an adequate investigation of Mr. Duchek's disputes. If they had, they would have learned that his loans had been discharged more than a month earlier.

27. Consequently, Mr. Duchek's credit reports continued to report that he owed over $100,000 in student loans, which damaged Mr. Duchek's credit score and prevented him from obtaining credit.

28. Because of Nelnet and MOHELA's failure to properly investigate and respond to Mr. Duchek's credit disputes, Mr. Duchek has suffered significant actual damages. For example, he suffered a decreased credit score and emotional distress.

### *Nelnet and MOHELA's FCRA Violations Were Willful*

29. Nelnet and MOHELA's processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. In fact, Nelnet and MOHELA acted in accordance with their intended procedures. In addition, the Defendants prioritize processing disputes quickly over making sure that the disputes are investigated thoroughly and accurately.

30. In addition, the willfulness of Nelnet and MOHELA's FCRA violations can be established by, for example:

   a. Congress enacted the FCRA in 1970, and Nelnet and MOHELA have had over 50 years to become compliant;

   b. Nelnet and MOHELA are each a corporation with access to legal advice through its own general counsel and outside litigation counsel. Yet, there is not

contemporaneous evidence that Nelnet and MOHELA determined that their conduct was lawful;

c. Nelnet and MOHELA knew, or had reason to know, that their conduct was inconsistent with the FCRA's plain language, regulatory guidance, and the relevant case law;

d. Nelnet and MOHELA voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

e. Nelnet and MOHELA's FCRA violations were repeated and systematic;

f. Nelnet and MOHELA had substantial documentation available to them that apprised them of their duties under the FCRA but still chose not to comply with the statute; and

g. Nelnet and MOHELA had notice of their defective dispute processing procedures through internal audits and litigation, but chose not to meaningfully change their policies and procedures to comply with the FCRA.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)

31. Mr. Duchek incorporates the preceding paragraphs.

32. On one or more occasion within the past two years, Nelnet and MOHELA violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Mr. Duchek's disputes.

33. When Mr. Duchek disputed the account with the credit bureaus, Nelnet and MOHELA used a dispute system named "e-OSCAR," which is an automated system that the consumer-reporting agencies have developed to quickly transmit disputes to furnishers.

34. E-OSCAR is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

35. E-OSCAR's dispute processing is systemic and uniform: when the credit reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

36. Upon information and belief, the ACDV form is way that Nelnet and MOHELA has elected to receive consumer disputes under 15 U.S.C. § 1681i(a).

37. Upon information and belief, the credit reporting agencies forwarded Mr. Duchek's disputes by ACDVs.

38. Nelnet and MOHELA understood the nature of Mr. Duchek's disputes when they received the ACDV forms.

39. Upon information and belief, when Nelnet and MOHELA received the ACDV form containing Mr. Duchek's disputes, they followed a standard and systematically unlawful process where they only reviewed their own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

40. Upon information and belief, when Nelnet and MOHELA receive a consumer dispute through e-OSCAR, they do not conduct a substantive review of any sort to determine whether there is information already in their computer system that would demonstrate the disputed information is misleading or inaccurate.

41. Because of Nelnet and MOHELA's violation of 15 U.S.C. § 1681s-2(b)(1)(A), Mr. Duchek suffered actual damages, including a reduced credit score, embarrassment, humiliation, stress, and other emotional distress.

42. Nelnet's and MOHELA's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rending them liable to Mr. Duchek for punitive damages under 15 U.S.C. § 1681n. In the alternative, Nelnet and MOHELA was negligent, entitling Mr. Duchek to recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)

43. Mr. Duchek incorporates the preceding allegations.

44. On one or more occasion within the past two years, Nelnet and MOHELA violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

45. As Mr. Duchek detailed in the previous Count, Nelnet and MOHELA have elected to use the e-OSCAR system for their FCRA disputes from the consumer reporting agencies.

46. When they received the ACDV forms from the credit-reporting agencies, Nelnet and MOHELA did not review any of the information that Mr. Duchek included in his dispute, which demonstrated that Nelnet's and MOHELA's reporting of the account was inaccurate.

47. If Nelnet and MOHELA had reviewed this information, they would have known that their previous reporting was incorrect and needed to be updated.

48. Nelnet and MOHELA also ignored the other information that the consumer-reporting agencies provided on Mr. Duchek's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

49. Nelnet and MOHELA knew the meaning of the dispute codes used by the consumer-reporting agencies in e-OSCAR.

50. Nelnet and MOHELA do not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer-reporting agencies.

51. Nelnet and MOHELA understood Mr. Duchek's disputes and that he was disputing the balances reported about the Nelnet and MOHELA accounts.

52. Despite this, Nelnet and MOHELA did not update their incorrect reporting regarding the account and continued to inaccurately attribute it to Mr. Duchek.

53. Because of Nelnet and MOHELA's 15 U.S.C. § 1681s-2(b)(1)(B) violations, Mr. Duchek suffered actual damages, including a decreased credit score, embarrassment, humiliation, and other emotional distress.

54. Nelnet and MOHELA's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering them liable for damages under 15 U.S.C. § 1681n.

55. In the alternative, Nelnet and MOHELA was negligent, entitling Mr. Duchek to recover damages under 15 U.S.C. § 1681o.

## COUNT THREE:
## VIOLATION OF FCRA, 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D)

56. Mr. Duchek incorporates the preceding allegations.

57. On one or more occasion within the past two years, Nelnet and MOHELA violated 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D) by publishing their representations within Mr. Duchek credit files without also including any notation at all that the account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

58. For example, Nelnet and MOHELA failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field of at least one of the ACDV dispute forms when they responded to the credit reporting agencies, which would have indicated that the accounts were disputed.

59. In addition, Nelnet and MOHELA failed to add any other notation that Mr. Duchek's account was disputed.

60. Furthermore, Nelnet and MOHELA knew that Mr. Duchek disputed the subject accounts through his written disputes letters to the credit reporting agencies.

61. Mr. Duchek's disputes were bona fide as the account reported inaccurate derogatory information.

62. Because of Nelnet and MOHELA's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Mr. Duchek suffered concrete and particularized harm, including but not limited to: credit denial, a reduced credit score, embarrassment, humiliation, and other emotional distress.

63. Nelnet and MOHELA's violations were willful, rendering them liable for punitive damages under 15 U.S.C. § 1681n. In the alternative, Nelnet and MOHELA were negligent, entitling Mr. Duchek to recover against it under 15 U.S.C. § 1681o.

64. Mr. Duchek is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Nelnet and MOHELA under 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Mr. Duchek demands judgment for actual, statutory, and punitive damages against Defendant; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

                              Respectfully submitted,
                              **BENJAMIN DUCHEK**

                              By: */s/ Kristi C. Kelly*
                                       Counsel

Kristi C. Kelly, DC No. 974872
Casey S. Nash, DC No. 1028868
Kelly Guzzo, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167

Email: kkelly@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiff*